IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THAT'S PAT'S, INC. an Illinois Corporation and Patrick Pfeifer, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> BOB'S BETTER BEEF, INC., d/b/a Bari Beef. <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Court No. <br> ) <br> ) |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

NOW COMES the Plaintiffs, That's Pat's, Inc, an Illinois corporation ("That's Pat's") and Patrick Pfeifer by and through their attorneys, Alan R. Lipton and Kourtney A. Mulcahy of HINSHAW & CULBERTSON, LLP, and for its Complaint for Damages and Injunctive Relief against Defendant Bob's Better Beef, Inc., d/b/a Bari Beef ("BBB"), states as follows:

## THE PARTIES

1.      That's Pat's is an Illinois corporation which owns and operates an Italian beef company in northern Illinois.

2.      Bob's Better Beef, Inc., d/b/a Bari Beef is an Illinois corporation with a principal place of business at 710 Schneider Drive, South Elgin, Illinois 60177.

## JURISDICTION

3.      This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331, in that this action involves questions of federal law pursuant to 28 U.S.C. § 1338(a) and 1338(b) involving federal claims for unfair competition, false designation of origin, and cybersquatting.

4.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

## VENUE

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) since the defendant resides in this judicial district and § 1391(b) (2) since a substantial part of the events giving rise to the claims occurred in this judicial district.

## FACTUAL BACKGROUND

6.     On or about April 5, 2006, That's Pat's was incorporated in the state of Illinois to sell and promote Italian beef and related condiments in Illinois and other states throughout the Midwest.  Patrick Pfeifer ("Pfeifer") is the President and Owner of That's Pat's.

7.     On or about December 30, 1988, BBB was incorporated in the state of Illinois.

8.     Pfeifer has worked in the food services industry for over 20 years, and has worked for such well-known companies such as Marriott, Sheraton and Sysco.  In or about 2002, Pfeifer began working as a regional manager for Randolph Packing Co., a maker of Italian sausage.

9.     In or about November/December 2005, and while still working for Randolph Packing Co., Pfeifer decided to create his own Italian beef and condiments company.  In order to form his company, Pfeifer utilized his contacts in the packaging and meat industry.

10.     In or about February 2006, Pfeifer contacted BBB and asked if they would like to manufacture Italian beef for Pfeifer's company.  BBB agreed to manufacture Italian beef for Pfeifer.  Pfeifer requested and received product samples for consumer sampling purposes at area grocery stores.

11.     During the product sampling process, Pfeifer decided to call his company That's Pat's.  In developing the brand name for his products, Pfeifer wanted to create a brand name that included his name and picture so that customers could have easy brand recognition.  As a result, Pfeifer created the "That's Pat's" trademark which includes a caricature of Pat's image ("MARK or "TRADEMARK").

2

12.     In or about February/March 2006, Pfeifer began working with William Peterson Graphics of Evanston, Illinois to create the artwork and a caricature of Pfeifer that would be used as the TRADEMARK for Pfeifer's Italian beef and condiment products. The caricature created

for Pfeifer was . The mark which includes the caricature within the mark were created to associate Pfeifer with his brand of products. Attached hereto as Exhibit "A" and incorporated herein by this reference is a true and correct copy of a March 15, 2006 note from William Peterson Graphics to Pfeifer.

13.     In or about March/April 2006, Pfeifer began working with Belmark, Inc. to create the design of the boxes for Pfeifer's Italian beef products. Pfeifer directed the design of the boxes, provided Belmark with the THAT'S PAT'S trademark including caricature that would appear on the boxes, decided where the trademark would be placed on the boxes, directed Belmark to affix the TRADEMARK to the boxes and approved all proofs related thereto. The boxes did not contain any reference to Bob's Better Beef, Inc. or Bari Beef.

14.     On or about April 4, 2006, Pfeifer received a quote from Belmark related to the costs associated with the design of the boxes for Pfeifer's Italian beef products. On or about April 5, 2006, Pfeifer paid Belmark $9,559.40, which represented half of the payment for the box designs. Attached hereto as Exhibit "B" and incorporated herein by this reference are true and correct copies of the April 4, 2006 quote from Belmark and the April 5, 2006 check from Pfeifer to Belmark.

15.     On or about April 24, 2006, Pfeifer paid Belmark $10,509.40, which represents the second half of the payment for THAT'S PAT'S Italian beef boxes. He then had those boxes

130359431 1267

shipped to BBB to fill product orders. Those boxes did not contain any reference to Bob's Better Beef, Inc. or Bari Beef. Attached hereto as Exhibit "C" and incorporated herein by this reference is a true and correct copy of the April 24, 2006 invoice from Belmark.

16.     Upon completion of the Italian beef box design, Pfeifer took the proofs of the boxes bearing the THAT'S PAT'S trademark including caricature to grocery stores in order to obtain pre-orders for the THAT'S PAT'S Italian beef products. Those proofs did not contain any reference to Bob's Better Beef, Inc. or Bari Beef.

17.     In or about April 2006, Pfeifer first obtained orders from grocery stores for THAT'S PAT'S Italian beef products. Once Pfeifer received these orders from the grocery stores, Pfeifer called BBB and instructed them on the details of the order, e.g. grocery store name and size of the order.

18.     Upon receiving product orders from Pfeifer, BBB filled the orders by placing its Italian beef product in the boxes bearing the THAT'S PAT'S trademark including caricature provided by Pfeifer. Based upon customer comments, Pfeifer would periodically instruct BBB to change the flavor or taste of the beef, e.g. less pepper to the aus jus. BBB altered the product sold under the THAT'S PAT'S trademark by following Pfeifer's instructions with regard to flavor or taste.

19.     Once the orders were filled, transportation was generally arranged and paid for by That's Pat's. However, on occasion, the Italian beef products would be transported by BBB, Pfeifer or the grocery stores would send trucks to pick up the orders. At all times, the product shipment would be accompanied by an Invoice that would state "That's Pat's, Inc." and include Pfeifer's corporate address. Attached hereto as Exhibit "D" and incorporated herein by this reference are true and correct copies of invoices showing billings for the purchase of THAT'S PAT'S Italian beef from Pfeifer.

130359431 1267

20.    The grocers purchasing THAT'S PAT'S products paid Pfeifer for each shipment. In turn, Pfeifer paid BBB for the private label product and shipment of the product to Pfeifer's customers, as appropriate.

21.    At all times, customers would receive the THAT'S PAT'S Italian beef products in boxes with the "That's Pat's" trademark including caricature affixed to the box. In addition to Pfeifer's trademark, the boxes always stated "Processed for That's Pat's." It was these boxes that included the mark THAT'S PAT'S and caricature that consumers would see in the grocery stores. No box supplied to BBB by Pfeifer ever contained any reference to Bob's Better Beef, Inc. or Bari Beef, with the exception of one run of boxes where the printer mistakenly added the Bari Beef logo to the standard THAT'S PAT'S box. This error was immediately corrected and never occurred again. The goods packaged inside the box were packaged in clear plastic with no markings. Attached hereto as Exhibit "E" and incorporated herein by this reference are true and correct copies of representative samples of boxes used throughout the relationship between Pfeifer and BBB, with the exception of an exemplar of the single mistaken run.

22.    To promote his branded Italian beef products, Pfeifer created and paid for banners and magnets, bearing the THAT'S PAT'S trademark including caricature, which were placed in grocery stores. THAT'S PAT'S also sponsored local sports teams. For example, That's Pat's sponsored a Dizzy Bat Race at the ballpark for the Schaumburg Flyers. Attached hereto as Exhibit "F" and incorporated herein by this reference is a true and correct copy of a June 9, 2009 article about that sponsorship.

23.    On or about February 28, 2007, BBB registered the domain name "thatspats.com" without Pfeifer's knowledge or consent. The website features a photograph of Pfeifer and the trademark THAT'S PAT'S which includes the caricature of Pfeifer. The text of the website refers

5

to Pfeifer and his company, but never mentions BBB. Attached hereto as Exhibit "G" and incorporated herein by this reference is a true and correct copy of that webpage.

24.    In or about 2007, Pfeifer expanded his THAT'S PAT'S product line to include giardiniera. Pfeifer first began using the company Il Primo to private label his giardiniera, but in 2009 changed to E Formella & Sons, Inc. to manufacture his giardiniera product. Both Il Primo and E Formella modified their giardiniera according to the order and specifications of Pfeifer. At all times, the giardiniera product was sold under the trademark THAT'S PAT'S including caricature.

25.    Area newspaper articles refer to Pfeifer and That's Pat's as the company behind the THAT'S PAT'S branded products. Attached hereto as Exhibit "H" and incorporated herein by this reference are true and correct copies representative of such articles. In each of these articles, BBB is identified only as the manufacturer of the Italian beef product.

26.    At all times during the relationship between the BBB and Pfeifer, boxes with the trademark THAT'S PAT'S including caricature affixed were paid for by That's Pat's and used to sell THAT'S PAT'S product. Attached hereto as Exhibit "I" and incorporated herein by this reference are true and correct copies representative of samples of the invoices for such purchases by Pfeifer.

27.    From April 2006 until recently, Pfeifer used BBB to manufacture his THAT'S PAT'S Italian beef products. In or about August, 2011, Pfeifer began using Henry J Meat Specialties to manufacture the Italian beef for his THAT'S PAT'S products. The first purchase order sent out using Henry J as the manufacturer of THAT'S PAT'S products was on or about November 2, 2011.

28.    On or about May 10, 2012, after Pfeifer changed manufacturers for his THAT'S PAT'S Italian beef products, BBB through its counsel, sent Pfeifer a cease and desist letter

130359431 1267

alleging trademark infringement. In that letter, BBB falsely claimed that it is the owner of the THAT'S PAT'S trademark and attached Certificates of Registration issued by the United States Patent and Trademark Office ("USPTO"). Attached hereto as Exhibit "J" and incorporated herein by this reference is a true and correct copy of said letter.

29.     Counsel for BBB also sent a copy of this letter to each of That's Pat's customers and to Richardson & Edwards, the company that made the boxes for the THAT'S PAT'S Italian beef products. In addition, representatives from BBB made phone calls to certain That's Pat's customers and to Richardson & Edwards threatening litigation if they continued to buy product from Pfeifer or manufacture boxes that include "That's Pat's." As a result of these communications, many grocers have refused to buy THAT'S PAT'S Italian beef products and Richardson & Edwards has refused to continue to manufacture boxes for THAT'S PAT'S Italian beef products.

30.     The USPTO Certificates of Registration for THAT'S PAT'S were obtained by BBB without Pfiefer's knowledge or consent. The registrations are "use" based registrations which require use of the mark in commerce. They show the registration by BBB of Pfeifer's first name – Pat. In addition, these registrations falsely claim that BBB is the owner of the trademark THAT'S PAT'S and have used the MARK in commerce.

31.     On or about May 17, 2012, That's Pat's, through its counsel, responded to BBB's invalid claims of infringement. Said letter states that That's Pat's is the rightful owner of the THAT'S PAT'S trademark and demands that BBB stop making false allegations about Pfeifer and his company. Among other things, said letter also demands the transfer of the domain name and Certificates of Registration to That's Pat's. Attached hereto as Exhibit "K" and incorporated herein by this reference is a true and correct copy of said letter.

130359431 1267

32.     As a result of BBB's false and deceptive claims of trademark ownership, That's Pat's has been unable to produce boxes for his products bearing the THAT'S PAT's trademark and has suffered loss of sales, an immediate decline of business and emotional distress.

33.     BBB's false and deceptive trademark registration and continued unauthorized use of the trademark THAT'S PAT'S is confusingly similar to That's Pat's rightful use of the trademark THAT'S PAT'S. It is also a form of identity theft and violation of Pfiefer's right of publicity in that the MARK incorporates Pfeifer's name and likeness which BBB is using against Pfeifer's will and without his consent.

34.     Because of such confusion, deceptive trade practices, and tortious interference with prospective economic advantage, BBB has willfully, maliciously, purposefully and intentionally interfered with That's Pat's business relationships.

35.     BBB's registration with the Patent and Trademark Office of the trademark THAT'S PAT'S, continued use of that mark, unauthorized use of Pfeifer's name, photograph, caricature and identity and infringement of THAT'S PAT'S mark have been willful and intentional and has forced That's Pat's to incur attorneys fees to protect its intellectual property rights in its trademark. This is an exceptional case within the meaning of the Lanham Act.

## FIRST CLAIM FOR RELIEF

### (False Designation of Origin, 15 U.S.C. § 1125(a))

36.     That's Pat's adopts and realleges paragraphs 1-35, inclusive.

37.     That's Pat's is the owner of the mark THAT'S PAT'S including the caricature of Pfeifer in connection with Italian beef and related condiments. That's Pat's sells its products throughout the Midwestern states of the United States and promotes its products in area newspapers and grocery stores throughout the Midwest.

130359431 1267

38.     BBB's registration and continued use of the trademark THAT'S PAT'S is likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of BBB with That's Pat's, or as to the origin, sponsorship, or approval of BBB's commercial activities.

39.     BBB's registration and use of the mark THAT'S PAT'S constitutes a false designation of origin in violation of §43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

40.     BBB's registration and use of the trademark THAT'S PAT'S constitutes a false or misleading description or representation in violation of § 43(a) of the Lanham Act (15 U.S.C. §1125(a).

41.     BBB's registration and use of the trademark THAT'S PAT'S has caused substantial and irreparable harm, damage and injury to That's Pat's and will continue to cause such harm, damage and injury to That's Pat's unless BBB use is permanently enjoined.

42.     Because of BBB's willful, deceptive, egregious, malicious, fraudulent, intentional and oppressive acts, That's Pat's demands an award of its attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (Cybersquatting, 15 U.S.C §1125(d)

43.     That's Pat's adopts and realleges Paragraphs 1 through 42, inclusive.

44.     BBB's registration and use of the domain name "thatspats.com" was made with a bad faith intent to profit from That's Pat's common law mark THAT'S PAT'S.

45.     BBB's registration and use of the domain name "thatspats.com" is confusingly similar to That's Pat's common law mark THAT'S PAT'S.

46.     BBB's actions constitute cyber piracy and cybersquatting with respect to the domain name "thatspats.com" in violation of Section 43(d) of the Trademark Act (15 U.S.C. §1125(d) (the Anti-Cybersquatting Consumer Protection Act) and in violation of That's Pat's common law mark THAT'S PAT'S.

130359431  1267

47.     Because of BBB's willful, deceptive, egregious, malicious, fraudulent, intentional and oppressive acts, That's Pat's demands an award of its attorneys' fees.

## THIRD CLAIM FOR RELIEF

### (State Claim – Common Law Trademark Infringement)

48.     That's Pat's adopts and realleges paragraphs 1- 47, inclusive.

49.     BBB's registration and use of the trademark THAT'S PAT'S is likely to cause confusion as to whether or not BBB is affiliated with, connected with, or sponsored by That's Pat's.

50.     BBB's conduct has caused substantial and irreparable harm, damage and injury to That's Pat's in that customers seeking information about That's Pat's are likely to believe that BBB is linked, affiliated or related to That's Pat's.

51.     BBB's conduct will continue to cause such harm, damage, and injury to That's Pat's unless BBB is permanently enjoined by the Court to immediately and forever cease such use of the trademark THAT'S PAT'S or any other confusingly similar name to THAT'S PAT'S.

## FOURTH CLAIM FOR RELIEF

### (State Claim – Violation of the Illinois Uniform Deceptive and Unfair Trade Practices Act – 815 ILCS 510/2)

52.     That's Pat's adopts and realleges paragraphs 1-51, inclusive.

53.     The foregoing acts of BBB are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

54.     Because of BBB's willful, deceptive, egregious, malicious, fraudulent, intentional and oppressive acts, That's Pat's demands an award of its attorneys' fees.

130359431  1267

## FIFTH CLAIM FOR RELIEF

**(State Claim – Tortious Interference with Prospective Economic Advantage)**

55.     That's Pat's adopts and realleges paragraphs 1-54, inclusive.

56.     That's Pat's had a reasonable expectation of entering into valid business relationships with consumers looking for Italian beef products.

57.     BBB is aware of That's Pat's expectation and intentionally published false statements related to BBB's ownership of the THAT'S PAT'S trademark.

58.     As a result of BBB's statements and false claims, That's Pat's business expectations have been diminished and destroyed resulting in monetary loss.  BBB's acts were willful, deceptive, egregious, malicious, fraudulent, intentional and oppressive.

59.     BBB's false claims of ownership of the trademark THAT'S PAT'S has caused substantial and irreparable harm, damage and injury to That's Pat's and will continue to cause such harm, damage and injury to That's Pat's unless BBB's use and publication of such false statements are permanently enjoined.

## SIXTH CLAIM FOR RELIEF

**(State Claim – Right of Publicity – 765 ILCS 1075/30)**

60.     Pfeifer adopts and realleges paragraphs 1-59, inclusive.

61.     BBB obtained a "use" based federal certificates of registration for the mark THAT'S PAT'S.  The name "Pat" is Pfeifer's first name.

62.     BBB did not obtain Pfeifer's permission to register the mark THAT'S PAT'S or use his name or likeness.

130359431 1267

63. BBB'S statements that it owns the trademark THAT'S PAT'S and its use of the trademark THAT'S PAT'S including Pfeifer's caricature is in violation of Pfeifer's right to publicity. BBB's use of Pfeifer's photograph on its website is also without Pfeifer's consent.

64. BBB's registration and use of the trademark THAT'S PAT'S and use of Pfeifer's name, caricature and photograph have caused substantial and irreparable harm, damage and injury to Pfeifer personally and will continue to cause such harm, damage and injury to Pfeifer unless BBB's use of the trademark THAT'S PAT'S, the domain name "thatspats.com," the webpage including Pfeifer's photograph and the caricature of Pfeifer are permanently enjoined.

65. Because of BBB's willful, deceptive, egregious, malicious, fraudulent, intentional and oppressive acts, That's Pat's demands an award of its attorneys' fees.

**PRAYER FOR RELIEF**

**WHEREFORE**, That's Pat's, Inc. requests that this Court enter judgement in its favor and against BBB on the claims herein and that this Court:

(1) Preliminarily and permanently enjoin BBB from using the trademark THAT'S PAT'S;

(2) Preliminarily and permanently enjoin BBB from using any trademark, service mark, or trade name confusingly similar to That's Pat's trademark THAT'S PAT'S;

(3) Preliminarily and permanently enjoin BBB from using Pfeifer's name "Pat," caricature, identity, photograph or likeness;

(4) Preliminarily and permanently enjoin BBB from using the domain name "thatspats.com" or any domain name that includes the name "Pat;"

(5) Preliminarily and permanently enjoin BBB from contacting any of That's Pat's customers or vendors;

130359431 1267

(6)     Award That's Pat's all damages it has sustained as a result of BBB's activities, according to proof, and that said damages be trebled pursuant to § 15 U.S.C. § 1117;

(7)     Award That's Pat's punitive and/or exemplary damages, according to proof;

(8)     Award That's Pat's its reasonable attorneys' fees pursuant to § 15 U.S.C. § 1117 and/or any other applicable source of attorneys' fees;

(9)     Award That's Pat's its costs of this action along with prejudgment and post-judgment interest pursuant to §15 U.S.C. § 1117;

(10)    Cancel the Certificates of Registration for the THAT'S PAT'S trademark that are in the name of BBB;

(11)    Order the transfer of the domain name "thatspats.com" to That's Pat's" and

(12)    Award That's Pat's such other and further relief as this Court deems just and proper in the premises.

**JURY TRIAL DEMANDED**

Respectfully submitted,

THAT'S PAT'S, INC.,
an Illinois corporation and Patrick Pfeifer, an
Individual

By: *s/s Kourtney A. Mulcahy*
One of Its Attorneys

Alan R. Lipton
Kourtney A. Mulcahy
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, IL  60601-1081
(312) 704-3000
Firm ID 90384

130359431 1267